James Lambie RUSSELL, Petitioner,

v.

Margaret Ann RUSSELL, Respondent.

Vivian Alice WEABER, Petitioner,

v.

Ronald Kent LORENSEN, Respondent.

Nos. D–3135, D–3148.

Supreme Court of Texas.

Nov. 24, 1993.

Louis Dugas, Jr., Orange, Michael D. Matheny, Beaumont, for petitioner in No. D–3135.

James Sparks, Jr., Jack Lawrence, Beaumont, for respondent in No. D–3135.

Ron Uselton, Sherman, for petitioner in No. D–3148.

R.J. Hagood, Denison, for respondent in No. D–3148.

## OPINION

HIGHTOWER, Justice.

In these consolidated cases, we consider the effect of a 1989 amendment to section 1.91 of the Texas Family Code, entitled "Proof of Certain Informal Marriages," concerning evidence of an agreement to be "informally" married. In each case, the trial court found that an informal marriage existed. The courts of appeal, however, reached conflicting results. In *Russell v. Russell*, the Ninth Court of Appeals affirmed the exis-

tence of an informal marriage although it reversed and remanded the case to the trial court to determine when the informal marriage began. 838 S.W.2d 909. In *Lorensen v. Weaber*, the Fifth Court of Appeals held that there was no evidence that the parties agreed to be married, reversed the trial court's judgment and rendered judgment that a valid marriage did not exist. 840 S.W.2d 644. We hold that under section 1.91 of the Family Code, as amended in 1989, an agreement to be married may be established by direct or circumstantial evidence. For the reasons explained herein, we reverse the judgments in *Russell v. Russell* and *Lorensen v. Weaber* and remand those causes to the Ninth and Fifth Courts of Appeal for further proceedings consistent with this opinion.

In *Russell v. Russell*, James and Margaret Russell were ceremonially married in Texas in 1981. In the period before the ceremonial marriage—1964 to 1981—the parties cohabited intermittently and had five children, all supported and acknowledged by James. Margaret alleged that she and James were married on or about April 17, 1964. The trial court, sitting without a jury, found that there was a common law marriage which began March 22, 1972. The court of appeals, interpreting the 1989 amendment to section 1.91(b) of the Texas Family Code, affirmed the existence of an informal marriage although it reversed and remanded the case to the trial court to determine when the informal marriage began. Concerning the 1989 amendment, the court of appeals stated "that regardless of the amendment of sec. 1.91(b), an agreement to be married may be inferred from direct or circumstantial evidence which preponderates that the parties lived together in the State of Texas and did, in Texas, represent to others that they were married." 838 S.W.2d at 913.

In *Lorensen v. Weaber*, Vivian Weaber and Ronald Lorensen began cohabitating on or about February 6, 1982. Lorensen is a pipefitter and his job required frequent moves. In January 1991, the couple separated and Weaber filed suit for divorce in February

1991. The trial court sitting without a jury found that the parties were married, without formalities, on February 16, 1982. The court of appeals held that there was no evidence that the parties agreed to be married, reversed the trial court's judgment and rendered judgment that a valid marriage did not exist.

## I.

 Weaber and Russell argue that under the 1989 amendment to section 1.91 of the Texas Family Code, an agreement to be "informally" married may be established by direct or circumstantial evidence. We agree.

Common law marriages have been recognized in Texas since 1847. *Tarpley v. Poage's Adm'r*, 2 Tex. 139, 149 (1847). From this beginning, Texas has rejected the necessity of ritual formalities to establish the marriage relationship. However, Texas' recognition of common law marriages has been described as "grudging." Kathryn S. Vaughn, Comment, *The Recent Changes to the Texas Informal Marriage Statute: Limitation or Abolition of Common–Law Marriage?*, 28 HOUS.L.REV. 1131, 1150 (1991) (hereinafter *Recent Changes* ). *See Texas Employers' Insurance Ass'n v. Elder*, 274 S.W.2d 144, 147 (Tex.Civ.App.—Fort Worth 1954), aff'd on other grounds, 155 Tex. 27, 282 S.W.2d 371 (1955) ("[t]he law does not favor, but merely tolerates ... common-law marriages....").

Despite strong pressure to do so, in 1970 the Texas legislature refused to abolish common law marriages when it enacted Title 1 of the Family Code. *Recent Changes*, 28 HOUS.L.REV. at 1150; Woodrow M. Bonesio, Comment, *Marriage and Divorce Under the Texas Family Code*, 8 HOUS.L.REV. 100, 107 (1970). As enacted, section 1.91 stated:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married.

In sections 1.91(a)(1) and 1.92–95, the legislature added a provision allowing a couple to file a declaration of informal marriage with the county clerk. Although such a declaration constitutes prima facie proof of the parties informal marriage, the parties need not make the declaration to have a valid common law marriage.

In 1989, some members of the legislature attempted to abolish common law marriage. *See* Tex.H.B. 588, 71st Leg., R.S. (1989); *Recent Changes*, 28 HOUS.L.REV. at 1151. The effort failed, but the legislature amended section 1.91(b) to make proof of common law marriages more difficult in Texas. *See* Act of June 14, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex.Gen.Laws 1458, 1459 (codified at Tex.Fam.Code Ann. § 1.91(b)). Section 1.91 now states:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) *A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.*

(Emphasis added). Prior to the 1989 amendment, section 1.91 permitted courts to infer or imply the couple's marriage agreement from evidence which established cohabitation and public representation. *See Estate of Claveria v. Claveria,* 615 S.W.2d 164, 166 (Tex.1981); *Howard v. Howard,* 459 S.W.2d 901, 903–04 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

## II.

■ For suits filed on or after September 1, 1989, the existence of a common law marriage in Texas requires proof of each of the three elements of an informal marriage set forth in section 1.91(a)(2) no later than one year after the relationship ended. The elements are (1) an agreement to be married, (2) after the agreement, the couple lived together in this state as husband and wife, and (3) the couple represented to others that they were married. The 1989 amendment defines the burden of proof for informal marriages and eliminates the ability of courts to simply infer an agreement to marry from evidence that they lived together as husband and wife and represented to others that they were married. One commentator described the effect of the 1989 amendment as follows:

Rather than abolishing the doctrine of informal marriage as had been proposed on numerous occasions in the past, the legislature tightened the rules for reliance on the doctrine by repealing the provision that allowed a court to infer an agreement to be married from proof of cohabitation and holding-out. This amendment, therefore, raises the question of how the elements of agreement may hereafter be proved.

In the future one of two basic fact patterns will develop depending on whether both parties are living. If both parties to the alleged informal marriage are alive, one of them will commonly deny the agreement. When the other party to the alleged informal union offers direct evidence of an express agreement to be presently married, the trier of fact will be required to weigh the testimony in the context of other evidence of the relationship. If one of the parties is dead, the survivor will be required to meet the limitation imposed by Evidence Rule 601(b) by providing corroboration of an alleged transaction with the decedent. Under most circumstances the proponent of the marriage will have an easier case in the latter instance unless there is convincing evidence that the decedent denied the existence of the agreement. If evidence of an express agreement to marry is not offered, the fact finder will have to treat the facts of cohabitation and holding-out as circumstantial evidence of the agreement in order to find a tacit agreement to be married. This process is, however, virtually identical to the prior process of inference. But by repealing the provision authorizing the fact-finder to infer an agreement from proof of two elements of an informal marriage, the legislature has not excluded a finding of a tacit agreement to be married. In making such a finding, however, it seems that the evidence of holding-out must be more convincing than before the 1989 agreement.

In a society in which non-marital cohabitation for extended periods of time is far more common than it once was, the fact-finder will have to weigh the evidence of a tacit agreement more carefully than in the past. As the statute now stands, an occasional uncontradicted reference to a cohabitant as "my wife" or "my husband" or "mine" will not prove a tacit agreement to be married without corroboration. Such a reference by the contestant of the union will, of course, be stronger evidence of an agreement than such a statement by the proponent. The non-social context of the contestant's reference to the proponent as his "wife" or her "husband" will also receive closer scrutiny. If the statement is made in a self-serving context, the fact-finder may be expected to disbelieve the truth of the statement. A forthright assertion of marriage with the consequence of liability (as when an alleged spouse seeks admission of the other to a hospital) may, on the other hand be far more probative of a tacit agreement to be married.

Joseph W. McKnight, *Family Law: Husband and Wife*, 44 Sw.L.J. 1, 2–3 (1990) (footnotes omitted). *But see Recent Changes*, 28 Hous.L.Rev. at 1151 (The 1989 amendment "effectively abolished common-law marriage in Texas.").

■ "Any ultimate fact may be proved by circumstantial evidence." *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex.1991); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). "A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case." *Dallas County Flood Control v. Cross*, 815 S.W.2d 271, 279–80 (Tex.App.—Dallas 1991, writ denied); *Walter Baxter Seed Co. v. Rivera*, 677 S.W.2d 241, 244 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Proof of an agreement to be married may be made by circumstantial evidence or conduct of the parties. "[I]n order to establish a common law marriage as a matter of law, it is not necessary to establish each element by direct proof, as each element may be established by circumstantial, as well as direct, evidence." *Tompkins v. State*, 774 S.W.2d 195, 208–09 (Tex.Crim.App. 1987), *cert. granted*, 486 U.S. 1053, 108 S.Ct. 2818, 100 L.Ed.2d 919 (1988), *judgmt aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). "Marriage, whether ceremonial or common-law, although the character of the evidence might be different, is proved as any other fact might be proved." *Tompkins*, 774 S.W.2d at 209. *See Estate of Claveria v. Claveria*, 615 S.W.2d at 166. Proof of cohabitation and representations to others that the couple are married may constitute circum-

stantial evidence of an agreement to be married. However, the circumstances of each case must be determined based upon its own facts.[1] We conclude that section 1.91, as amended in 1989, does not require direct evidence of an agreement to be married in order to establish a common law marriage, but that the agreement may be proved by circumstantial evidence.[2]

### III.

■ Although an agreement to be married may be proved by circumstantial evidence, it is subject to legal and factual sufficiency review on appeal to the court of appeals and legal sufficiency review on appeal to this court. *See, e.g., Estate of Claveria v. Claveria*, 615 S.W.2d at 165–67; *Winfield v. Renfro*, 821 S.W.2d 640, 645–46 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, there must be legally and/or factually sufficient evidence concerning each element of a common law marriage. A finding that there is legally and/or factually sufficient evidence of cohabitation and public representation will not necessarily constitute legally and/or factually sufficient evidence of an agreement to be married. There must also be legally and/or factually sufficient evidence of an agreement to be married which may include direct and/or circumstantial evidence.

In *Russell v. Russell*, the court of appeals considered whether there was legally or factually sufficient evidence to support the trial court's finding that a common law marriage existed.[3] The court held "that the evidence which we have recited clearly shows cohabi-

---

1. One of the dissent's primary complaints appears to be that this court has failed to provide a "bright line" test concerning the evidence which does and does not constitute circumstantial evidence of an agreement to be married. However, as in most evidentiary matters subject to legal and factual sufficiency review, each case must be evaluated based upon its own facts and no "bright line" test may be applied.

2. The dissent erroneously argues at great length that this court is ignoring the 1989 amendment to section 1.91 and is interpreting the amendment as having no effect on the proof required by section 1.91. Before the 1989 amendment, the existence of an agreement to be married was

effectively presumed upon proof of cohabitation and public representation. However, after the 1989 amendment, the existence of an agreement to be married must be proved either by direct or circumstantial evidence. In addition, the dissent is attempting to further amend section 1.91 to add the requirement that an agreement to be married must be proved by direct evidence and may not be proved by circumstantial evidence.

3. Contrary to the dissent's assertion, this court has not misread the court of appeals' opinion in *Russell v. Russell*.

tation and holding out, and is, standing alone, sufficient for our overruling ... [James Russell's] no evidence point." 838 S.W.2d at 915–16. The court further held that the "evidence of holding out to be husband and wife, brought about at the insistence of ... [James Russell], was evidence of sufficient weight for the trial court to 'infer' an agreement to be married." 838 S.W.2d at 917.[4] Assuming that legally or factually sufficient evidence of cohabitation and public representation existed, the court erroneously failed to consider whether there was legally or factually sufficient evidence of an agreement to be married and erroneously inferred an agreement to be married.

In *Lorensen v. Weaber*, the court of appeals considered whether there was legally sufficient evidence to support the trial court's finding that a common law marriage existed between the parties. The court of appeals held that there was no evidence that the parties agreed to be married, stating that "[w]hile it is unclear how specific the evidence of an agreement to be married must be after the statutory provision allowing inference of an agreement was repealed, it is clear that such evidence does not exist in this case." 840 S.W.2d at 647. However, it is unclear whether the court considered any circumstantial evidence when it determined that there was legally insufficient evidence of an agreement to be married.[5]

In *Russell v. Russell*, the court erroneously failed to consider whether there was legally or factually sufficient evidence of an agreement to be married and erroneously inferred an agreement to be married. Before this court, Russell asserts that the court of appeals misconstrued the effect of the 1989

amendment to section 1.91 and erred in finding that there was legally and factually sufficient evidence to support the trial court's finding that a common law marriage existed. In *Lorensen v. Weaber*, it is unclear whether the court considered any circumstantial evidence when it determined that there was legally insufficient evidence of an agreement to be married. Before this court, Weaber asserts only that the court of appeals misconstrued the effect of the 1989 amendment to section 1.91. Since Russell will probably involve factual sufficiency questions and Weaber did not assert a legal sufficiency challenge in this court, the entire causes are remanded to their respective courts of appeal.[6]

Accordingly, we reverse the judgments in *Russell v. Russell* and *Lorensen v. Weaber* and remand those causes to the Ninth and Fifth Courts of Appeal for further proceedings consistent with this opinion.

PHILLIPS, C.J., and DOGGETT, CORNYN, GAMMAGE, ENOCH and SPECTOR, JJ., join in the opinion and the judgment.

GONZALEZ, J., joined by HECHT, J., dissents.

GONZALEZ, Justice, dissenting.

In 1989 the legislature **repealed** the Family Code provision which provided that **an agreement to enter into a common-law marriage could be inferred** if one of the parties proved that they lived together as husband and wife and represented to others that they were married. Today, the Court ignores this amendment and in effect holds

---

4. The court did not consider evidence of cohabitation because "the evidence clearly supports far more than a mere passive cohabital relationship between ... [James and Margaret Russell]. The evidence shows that ... [they] lived together for long periods of time." 838 S.W.2d at 916.

5. We express no opinion concerning the legal sufficiency of the evidence in either cause.

6. The dissent also erroneously implies that *Flores v. Flores*, 847 S.W.2d 648 (Tex.App.—Waco 1993,

writ denied) is inconsistent with the court's opinion. *Flores* recognized "that the plain meaning of the statute [section 1.91], as it now exists, allows proof of an agreement to be married by direct evidence, by a combination of direct and circumstantial evidence, or by wholly circumstantial evidence." *Id.* at 652. The court then proceeded to review the record to determine whether there was legally sufficient evidence of an agreement to be married. The court concluded that the evidence was legally insufficient to support an agreement to be married. *Id.*

that a fact finder can look to cohabitation and holding-out as circumstantial evidence of an agreement to be married. This approach is identical to the process of inferences that the legislature repealed. Under our constitution, the legislature is authorized to make this change and we should not disregard it. To do so violates the separation of powers doctrine. I would affirm the judgment of the court of appeals in *Lorensen v. Weaber*[1] and reverse and render in *Russell v. Russell.*[2]

## I. The Amendment

The 1989 amendment to section 1.91 of the Texas Family Code requires direct evidence of an agreement to be married in order to establish an informal marriage. Prior to the amendment, subsection (b) of section 1.91 allowed courts to infer the existence of an agreement to be married as long as the elements of cohabitation and holding-out

were proved. Subsection (b) was repealed by the 1989 amendment and replaced with a statute of limitations.[3]

As acknowledged by the Court, by amending the statute, the legislature intended that each of the elements listed in subsection (a)(2), an agreement to be married, cohabitation, and holding-out, must be proved. It is no longer permissible simply to infer the existence of an agreement to be married from proof of cohabitation and holding-out. While I agree that each element must now be proved, I do not agree with the Court that an agreement to be married can be proved by circumstantial evidence.

The court of appeals in *Russell* held that the requisite agreement could be "inferred from direct or circumstantial evidence which preponderates that the parties lived together in the State of Texas and did, in Texas, represent to others that they were married."

1. 840 S.W.2d 644. Vivian Weaber and Ronald Lorensen began a relationship in 1982. They lived together in Illinois, Iowa, New Mexico, and California before moving to Texas in 1990. During their relationship, they rented property under the names of Vivian and Ronald Lorensen, and used the name Lorensen for certain utility bills. Mr. Lorensen filed as a "single" person on his tax returns, but claimed Ms. Weaber as his dependent, designating her as a "friend" on each return. There were no children born to them. The trial court held that a common-law marriage existed, but the court of appeals reversed and rendered on the basis that there was no evidence of an agreement to be married.

2. 838 S.W.2d 909. Believing that death was imminent, James and Margaret Russell were ceremonially married in Texas in 1981. Prior to this ceremony, from 1964 to 1981, not only did Mr. Russell father five children with Mrs. Russell, but during this same period, he fathered and supported other children by other women. The underlying issue in this case is whether the parties entered into a common-law marriage before the ceremonial marriage so that Mrs. Russell can share the assets that Mr. Russell acquired before 1981. The trial court found a common-law marriage and the court of appeals agreed, but it reversed and remanded because the evidence was factually insufficient to support the finding of the date of inception of the marriage.

3. Prior to the 1989 amendment, section 1.91 of the Texas Family Code, entitled "Proof of Certain Informal Marriages" read:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

 . . . . .

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and they represented to others that they were married.
(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, **the agreement** of the parties **to marry may be inferred** if it is proved that they lived together as husband and wife and represented to others that they were married.
Act of May 14, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex.Gen.Laws 2707, 2717, *amended by* Act of June 14, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex.Gen.Laws 1458, 1459. (emphasis added).
The section was amended in 1989 to read:
(a) In any judicial, administrative, or other proceeding, the marriage of a man and a woman may be proved by evidence that:

 . . . . .

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and they represented to others that they were married.
(b) A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.
Tex.Fam.Code Ann. § 1.91 (Vernon 1993).

*Russell,* 838 S.W.2d at 913. According to the *Russell* court, circumstantial evidence of an agreement to be married would include having lived together, having held oneself out as being married, and any evidence which would go, directly or indirectly, to prove cohabitation or holding oneself out as married. *Id.* The *Russell* court held that allowing the agreement to be proved by circumstantial evidence would be necessary, since an express agreement would be rare and difficult to prove. *Id.* Today, the Court supports this result, citing the proposition that "[a]ny ultimate fact may be proved by circumstantial evidence." *State v. $11,014.00,* 820 S.W.2d 783, 785 (Tex.1991).

Both the *Russell* court of appeals and this Court ignore the intent of the legislature in amending the statute. Under their interpretation of the statute, the amendment did nothing more than add a statute of limitations; it did not affect the proof necessary to show the existence of an agreement to be married. Under this interpretation, the legislature accomplished nothing by repealing the old subsection (b). This interpretation violates a fundamental tenet that the legislature is never presumed to do a useless act. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (holding that every word or phrase excluded from a statute is presumed to be excluded for a purpose).

In my opinion, the only conceivable reason to omit the language regarding permissible inferences in the new version of the statute is that the legislature sought to inform Texans that these inferences are no longer permissible—that an agreement to be married must be proved by direct evidence. The state of the law prior to the 1989 amendment allowed the existence of an agreement to be married to be proved by proving cohabitation and holding-out. By deleting the provision which permitted this inference to be made, the legislature indicated a clear intent not to allow such inferences in the future. *See Allen Sales and Servicecenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975) (holding that

statutes should be construed consistent with existing law unless a contrary intent is clear); *Transportation Ins. Co. v. Maksyn,* 580 S.W.2d 334, 338 (Tex.1979) (holding that deletion of a provision indicates a legislative intent to reject the proposition stated in the deleted language).

## II. The Effect

The legislature retained the requirement of an agreement to be married in order to prove an informal marriage. However, Section 1.91 no longer permits the existence of an agreement to be inferred upon proof of the other required elements, cohabitation and holding oneself out as married. It follows that an agreement to be married cannot be proved circumstantially using the evidence that proves cohabitation and holding-out, because this requires making an inference that the legislature no longer permits. To suggest, as the Court does today, that the legislature meant that proof of cohabitation and holding-out no longer gives rise to an inference of an agreement to be married, but now is circumstantial evidence of that agreement, flies in the face of reason. In both cases, the evidence used to prove cohabitation and holding-out gives rise to the inference of the existence of an agreement. Are we to believe that the legislature wants Texas courts to continue as before, and simply call it something different?

In my opinion, an agreement to be married must be proved directly in order to find an informal marriage under Texas Family Code Section 1.91. This direct proof can be written or oral. When one party claims that an agreement existed and the other denies it, the issue becomes one of credibility for the fact finder to resolve. This approach probably will make it more difficult to prove an informal marriage, but I believe that is what the legislature intended when it amended the statute. If, as in *Weaber,* no party is willing to state, under oath, that there was an explicit agreement to be married, an agreement should not be inferred. This rule will prevent "accidental" marriages, in which cohabitation and holding-out were used, under the

old act, to bind a party who never intended to enter into a marriage, formal or informal. The intent to enter into a marriage must be affirmatively shown, which is, I believe, what the legislature intended.

One can only imagine the confusion and frustration of the litigants and the court of appeals in *Russell* when they learn that today's decision resolves nothing. The Court's opinion stops short of actually deciding anything, and states, "We express no opinion concerning the legal sufficiency of the evidence ... [to support a finding of common-law marriage]." 865 S.W.2d at 934 n. 5. The Court mistakenly concludes that it need not reach the legal sufficiency of the evidence because it misreads the court of appeals' opinion. The Court states, "In *Russell v. Russell,* the court [of appeals] erroneously failed to consider whether there was legally or factually sufficient evidence of an agreement to be married." 865 S.W.2d 934. The court of appeals did no such thing. To the contrary, it is difficult to discern enough difference between the opinion of the court of appeals and today's Majority opinion to justify reversal. Like the Majority, the court of appeals recognized that an agreement to be married is a separate element of proof. *Russell,* 838 S.W.2d at 914. Both courts recognize the 1989 amendment and rely on Professor McKnight for their interpretation of the amendment. *Id.* at 913 (quoting Joseph W. McKnight, Family Law: Husband and Wife, 44 Sw.L.J. 1 (1990)). Consistent with the Majority opinion, the court of appeals states:

> We hold that evidence sufficient to support a finding on the second and third elements can support a finding on the first element, "that they did in fact agree to be husband and wife."

*Russell,* 838 S.W.2d at 914. The Majority is in such agreement with the court of appeals that it is difficult to discern any difference between the two opinions.

Perhaps the difference between the opinions is that the court of appeals opined that cohabitation and holding-out constitutes "evidence-of-a-kind" of an agreement to be mar-

ried, which the opposing party is free to rebut or counter. *Id.* at 913. In other words, the court of appeals found some evidence of an agreement to be married. Today the Court reverses *Russell* and says that in some cases evidence of cohabitation and holding-out is evidence of an agreement to be married, but refuses to say if this is one of those cases. With no guidance from this Court, the court of appeals may only make a blind guess, making a second application for writ of error probable.

Also, curiously, today the Court lets stand an opinion that holds:

> Thus, in light of Peggy's failure to produce any direct evidence of an agreement or any evidence from which an agreement might be inferred, we hold that there is a complete absence of evidence of a vital fact, i.e., an agreement to marry, and that the evidence is legally insufficient to support the implied finding.

*Flores v. Flores,* 847 S.W.2d 648 (Tex.App.—Waco 1993, writ denied). In *Flores,* the plaintiff produced evidence of cohabitation and holding-out, yet the court of appeals held that there was no evidence of an agreement to be married. In my opinion, today's actions will serve only to confound the bench and bar. We can and should do better.

HECHT, J., joins this dissenting opinion.