COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-371-CV

 

 

IN THE
ESTATE OF GEORGE ANTHONY 

WALKER, JR., DECEASED



 

                                              ------------

 

          FROM COUNTY
COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

The sole issue in this case is whether the trial
court=s
findings of fact underlying its conclusion of law that there was no informal
marriage[2]
between Pamela Walker and George Walker are against the great weight and
preponderance of the evidence.  We
affirm.








                                            Background

Pamela and George met in 1995 and began living
together in 1998.  They built a home
together in 2001, moved into it in 2002, and lived there together until George=s death
in 2005. 

Pamela filed a petition in George=s estate=s
probate proceedings, seeking a declaration that she and George had entered into
an informal marriage and that she was his widow.  The issue was tried to the bench. 

Pamela testified that George bought a wedding
ring for her in 1999.  She said they
considered a marriage ceremony after they moved into the new house in 2002 but
someone at the courthouse told them that Abecause
of [their] status of living together as husband and wife, [they] were already
married,@ so they
decided the ceremony was unnecessary.








Pamela testified that she and George agreed to be
husband and wife and that Athat=s how
[they] were introduced.  That=s how
[their] bills and stuff and everything was@ and
that they A[p]retty much@ told
the world that they were husband and wife. 
But she said her name was not on the deed to the new house because her
credit was bad.  She also said that they
filed separate income tax returns because tax preparers told them Ait was
the best way@ to file.  Pamela acknowledged that she represented that
she was unmarried when she applied for public assistance in 2002 to pay for an
operation for her son, but she said she Ahad no
choice@ because
George was off work, having broken his foot, and they had no income or
insurance.  She also admitted that she
indicated she was divorced on an occupational injury form in 2003. 

George and Pamela took several vacations
together, including trips to San Antonio, Las Vegas, Pamela=s family
reunion in Amarillo, and George=s union
meeting in Dallas.  Pamela said they
bought a dog together and that George treated her children as his own.  She testified that she and George were
planning a Abig, formal wedding@ for
August 2006, but George died in October 2005. 

Mack Ingram testified that George called Pamela
his wife and his Aold lady@ and
that George introduced Pamela as his wife the first time Ingram met her. 

Jordan Brown, Pamela=s son
from a prior marriage, identified George as his stepfather and testified that
he introduced George to school friends as his father. 

Brittany Brown, Pamela=s
daughter from a prior marriage, testified that she, too, introduced George to
her friends as her father and that he would go to her school when she got into
trouble there.








Linda Boughton, a school nurse at Jordan and
Brittany=s high
school, testified that Pamela referred to George as her husband and that he
referred to her as his wife. 

Ruben Alaniz, a coworker of George=s for
twelve or thirteen years, testified that George referred to Pamela as his wife.


The trial court made the following findings of
fact, among others; these are the specific findings Pamela challenges on
appeal:

16.   [George
and Pamela] lived together at 5217 [Brookwood] Drive, Wichita Falls, Wichita
County, Texas and the [m]ortgage on the property dated 4-1-02 lists [George], a
single man. [Pamela] is not listed on the deed.

 

. . . .

 

18.   [George
and Pamela] never filed income tax returns as husband and wife.

 

19.   They
planned a big wedding in August of 2006[, but] it never took place.

 

20.   [Pamela]
claimed to be single when she filed for CHIPS for her daughter=s insurance.

 

21.   [Pamela]
claimed on 8-22-03 to be divorced when she filed for an occupational injury
with the Wichita Falls Independent School District.

 

22.   [Pamela]
marked Asingle@ on a box on [a] WFISF
employee document.

 

. . .
.

 








28.   [Pamela
and George] did not agree to be married, but they did live together in this
State, but not as husband and wife. 

 

The trial court also made
the following conclusions of law:

 

$                  
The evidence was factually insufficient to support the required
elements of an informal marriage[;]

 

$                  
An informal marriage did not exist between [Pamela and George; and]

 

$                  
[Pamela] is not the widow and surviving spouse of [George].

 

Pamela died on July 9, 2008, and the temporary
administrator of her estate is pursuing this appeal.  In a single issue, she challenges the factual
sufficiency of the evidence to support the findings of fact recited above.

                                       Standard
of Review

Findings of fact entered in a case tried to the
court have the same force and dignity as a jury=s
answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s
answer.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).








When reviewing an assertion that the evidence is
factually insufficient to support a finding, we set aside the finding only if,
after considering and weighing all of the evidence in the record pertinent to
that finding, we determine that the evidence supporting the finding is so weak,
or so contrary to the overwhelming weight of all the evidence, that the answer
should be set aside and a new trial ordered.  Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986) (op. on reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

                                         Informal
Marriage

The elements of an informal marriage are that a
man and woman (1) agreed to be married, (2) lived together in this State as
husband and wife after the agreement, and (3) in this State represented to
others that they were married.  Tex. Fam.
Code Ann. ' 2.401(a)(2) (Vernon 2006).








To establish an agreement to be married, Athe
evidence must show the parties intended to have a present, immediate, and
permanent marital relationship and that they did in fact agree to be husband
and wife.@ 
Eris v. Phares, 39 S.W.3d 708, 714 (Tex. App.CHouston
[1st Dist.] 2001, pet. denied).  The
agreement to be married may be established by direct or circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  The
testimony of one of the parties to the marriage constitutes direct evidence the
parties agreed to be married.  See
Eris, 39 S.W.3d at 714 (citing Collora v. Navarro, 574 S.W.2d 65, 70
(Tex.1978)); In re Estate of Giessel, 734 S.W.2d 27, 32 (Tex. App.CHouston
[1st Dist.] 1987, writ ref=d
n.r.e.).  The conduct of the parties and
evidence of cohabitation and representations to others may constitute
circumstantial evidence of an agreement depending on the facts of the case.  See Russell, 865 S.W.2d at 933; Eris,
39 S.W.3d at 714.

The element of holding out requires more than
occasional references to each other as Awife@ and Ahusband.@  Flores v. Flores, 847
S.W.2d 648, 653 (Tex. App.CWaco
1993, writ denied); see also Ex parte Threet, 160 Tex. 482, 485B86, 333
S.W.2d 361, 363B64 (1960) (finding no evidence
of holding out where woman introduced man as her husband to two or three
friends, told a few others that she was married, and wore wedding band given to
her by man); Danna v. Danna, No. 05‑05‑00472‑CV, 2006
WL 785621, at *1 (Tex. App.CDallas
March 29, 2006, no pet.) (mem. op.) (A[I]solated
references to each other as husband and wife alone do not establish a holding
out[.]@)

                                             Discussion








In this case, Pamela=s
testimony is direct evidence that she and George agreed to be married.  There is also evidence that they lived
together in Texas as husband and wife after agreeing to be married, and there
is evidence that they represented to others that they were married.  Thus, there is some evidence to support all
three informal-marriage elements.  But
there is also substantial evidence to the contrary, such as Pamela=s and
George=s
separately-filed income tax returns, the absence of Pamela=s name
on the deed to their residence, and Pamela=s
assertion that she was single or divorced on various documents.  The question before us is whether the
evidence supporting the trial court=s
findings that there was no informal marriage is so weak, or so contrary to the
overwhelming weight of all the evidence, that the findings should be set aside.  See Pool, 715 S.W.2d at 635; Garza,
395 S.W.2d at 823.








Appellant cites two cases for the proposition
that conflicting evidence similar to the evidence in this case will support a
finding of an informal marriage.  In Estate
of Giessel, Kuchera testified that she and Giessel had agreed to be married
and thereafter lived together as husband and wife for twenty years until
Giessel=s
death.  734 S.W.2d at 28.  Some witnesses testified that Giessel
referred to Kuchera as his wife, but other witnesses testified that he denied
being married and vowed never to marry.  Id.
at 29B30.  During the purported informal marriage,
Kuchera had executed a mineral lease as ARosie
Kuchera, a widow,@ and Giessel had executed a
mineral lease as AJohn J. Giessel, a single man.@  Id. at 28.  The parties also filed separate tax
returns.  Id. at 30.  A jury found that Kuchera and Giessel had
been informally married.  Id. at
28.  On appeal, Giessel=s family
challenged the legal and factual sufficiency of the evidence to support the
informal-marriage finding, and the court of appeals held that the evidence was
both legally and factually sufficient.  Id.
at 31, 32.

A similar fact pattern emerged in the other case
Appellant relies on, Romano v. Newell Recycling of San Antonio, L.P.,
No. 04‑07‑00084‑CV, 2008 WL 227974 (Tex. App.CSan
Antonio Jan. 30, 2008, no pet.).  Sara
Guerro testified that she and Alejandro Gonzales began cohabiting in 1990 and
soon thereafter began referring to themselves as husband and wife.  Id. at *4.  She said that Gonzales introduced her to his
friends as his wife.  Id. at
*5.  Some witnesses testified that
Gonzales referred to Guerro as his wife, but others said he referred to her as
his girlfriend.  Id. at *5.  In 1997, Guerro signed loan documents that
described her as a single person; and when Gonzales died, she filled out an
insurance claim form, and in answer to the question whether Gonzales was
married at the time of his death, she wrote, Anot to
my knowledge.@ 
Id. at *4.  The trial court
found that Guerro and Gonzales were informally married, and the court of
appeals held that the evidence was legally and factually sufficient to support
that finding.  Id. at *6.








We agree with Appellant that the evidence in
Estate of Giessel and Romano is similar to the evidence in this
case.  But we disagree about the
significance of those similarities.  With
regard to factual sufficiency, neither case stands for the proposition that a
fact pattern like the one in our case precludes a finding of no informal
marriage, as Appellant contends. 
Instead, as the Giessel court noted, AThere
was substantial evidence before the jury to support either an affirmative or
negative answer to the [informal-marriage] issue.@  734 S.W.2d at 32.  And as the Romano court observed, A[T]hese
conflicts do not preclude a finding that a common law marriage existed . . .[;]
rather, the conflicts go to the weight of the evidence and were for the trial
court to resolve.@ 
2008 WL 227974, at *6.  Thus, the
real significance of Giessel and Romano to the case before us is
the application of the factual-sufficiency standard of review: When there is
conflicting evidence about the existence of an informal marriage like the
evidence in those cases and in this case, whether the parties entered into an
informal marriage is a question for the factfinder.

In this case, the trial court resolved the
conflicting evidence by finding that Pamela and George had not entered into an
informal marriage.  Viewing all of the
evidence, we cannot say that the evidence supporting the finding is so weak, or
the weight of the contrary evidence so overwhelming, that the answer should be
set aside and a new trial ordered.  See Pool, 715 S.W.2d at 635; Garza,
395 S.W.2d at 823.  Thus, the evidence is
factually sufficient to support the trial court=s
finding, and we overrule Appellant=s sole
issue.








                                             Conclusion

Having overruled Appellant=s sole
issue, we affirm the trial court=s
judgment.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

 

DELIVERED:  July 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]AInformal marriage@ is the legal term for
the colloquial term Acommon-law marriage.@