Opinion issued May 26, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00951-CV

———————————

Jilverto Martinez, Appellant

V.

Martha Lopez, Appellee



 



 

On Appeal from the 247th District Court

Harris County, Texas



Trial Court Case No. 2009-13099

 



 

MEMORANDUM OPINION

          Appellant,
Jilverto Martinez, challenges the trial court’s finding that a common-law
marriage existed between himself and appellee, Martha Lopez.  In one issue, Martinez argues that the trial
court erred in holding that a common-law marriage existed and that Lopez had
met her burden of proof to establish the existence of a common-law marriage.

          We affirm.

Background

          Martinez
and Lopez began dating in 2000 while Lopez was pregnant with A.L., a child from
a previous relationship, and while Martinez was separated from his wife, Maria
Martinez.  Martinez’s divorce from Maria was
finalized in June 2001.  Before the
divorce was finalized, Lopez became pregnant with Martinez’s son, G.M., who was
born in July 2001.  Martinez and Lopez,
along with A.L., began living together upon G.M.’s birth.  

          Martinez
and Lopez’s second child, J.M., was born in 2002.  Martinez and Lopez continued to live together
until March 2008.  G.M. and J.M. both
lived with Lopez until May 2008, when G.M. moved in with Martinez.  Martinez filed a Suit Affecting the Parent-Child
Relationship requesting custody and visitation with J.M.  Lopez answered and counter-petitioned for divorce,
alleging that she and Martinez had a common-law marriage.  Martinez denied that they had such a
marriage.

          At
trial, Martinez testified that he and Lopez began living together when G.M. was
born because he wanted to care for his son. 
Lopez testified that although Martinez never told her that they were
married, she used to introduce Martinez as her husband and he represented to
his friends and family that she was his wife. 
Lopez also testified that they shopped for property and a trailer together,
but she admitted that her name was not on the title to that property.  Lopez also acknowledged that Martinez bought
a truck while they were together and that her name was not on the title of the
truck, stating, “He never named me on anything of his.”  Lopez also testified that she did not work
outside the home while she was living with Martinez.  Instead, she prepared all of the meals and
provided all of the child care. 
Regarding Martinez’s and Lopez’s own views of the status of their
relationship, Lopez testified:

[Counsel]:   And why do you think it is that he never put
you on the taxes.

 

[Lopez]:      Well, because he always looked at me like
I was just anything, like I had no value to him.

 

[Counsel]:   Not as a wife?

 

[Lopez]:      To him, no.  He didn’t see me like that.

 

[Counsel]:   You’re basically just the mother of his
children?

 

[Lopez]:      Yes.

 

[Counsel]:   And he would treat you as such?

 

[Lopez]:      Yes.

 

[Counsel]:   Did you ever feel like you were his wife?

 

[Lopez]:      Well, yes.

 

[Counsel]:   Even though he pretty much told you that he
wasn’t?

 

[Lopez]:      Yeah, either way.  For me, my life with him was [sic] his wife.

 

[Counsel]:   But, of course, he didn’t see it that way?

 

[Lopez]:      No.

 

[Counsel]:   And you knew that?

 

[Lopez]:      He will make me feel that way.

 

[Counsel]:   So the question—I’m sorry.  I’m just asking it, so you knew that, though?

 

[Lopez]:      Yes.

 

Martinez’s counsel also questioned Lopez about her
statement that she shopped for the property and trailer with Martinez but did
not insist on having her name on the title:

[Counsel]:   And whenever you bought the property, you
never insisted on your name being put on there?

 

[Lopez]:      Yes.

 

[Counsel]:   And it was not added though?

 

[Lopez]:      No, because he comes from a marriage where
he lost everything, so he is afraid that the same thing will happen with me.

 

[Counsel]:   So he is basically very careful not to pass
as your husband?

 

[Lopez]:      Of course.

 

[Counsel]:   And the same thing happened with the truck?

 

[Lopez]:      Yes.

 

[Counsel]:   So in the end, he made sure to let you know
and basically informed you that he was not your husband?

 

[Lopez]:      Well, yes.

 

The trial record contained a copy of Martinez’s 2007
federal income tax return, showing A.L., G.M., and J.M. as dependents, and
showing that Martinez was filing as the head of household.

          The
trial court signed the final decree of divorce and stated in its findings of
fact that Martinez and Lopez “entered into an informal marriage on 07/08/2001.”[1]  The trial court then found that the marriage
had become insupportable and made findings regarding child support and division
of the marital estate.

 

 

Sufficiency of Evidence

          In
his sole issue, Martinez argues that the trial court erred in holding that a
common-law marriage existed and that Lopez had met her burden of proof to establish
the existence of a common-law marriage.

A.   Standard of Review

In a bench trial, the trial court’s
findings of fact have the same weight as a jury verdict, and we review the
legal and factual sufficiency of the evidence to support the findings using the
same sufficiency standards as when we review a jury’s verdict.  Daniel
v. Falcon Interest Realty Corp., 190 S.W.3d 177, 184 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (citing Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994)).  When challenged, a trial court’s findings of
fact are not conclusive if, as here, there is a complete reporter’s record on
appeal.  Id. (citing In re K.R.P.,
80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

When conducting a legal sufficiency
review, we credit favorable evidence if a reasonable fact-finder could and
disregard contrary evidence unless a reasonable fact-finder could not.  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Brown v. Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.]
2007, no pet.).  We consider the evidence
in the light most favorable to the finding under review and indulge every
reasonable inference that would support it. 
City of Keller, 168 S.W.3d at
822.  We sustain a no-evidence contention
only if:  (1) the record reveals a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of
the vital fact.  Id. at 810.

When conducting a factual
sufficiency review of a finding on which the appellant did not have the burden
of proof, we consider and weigh all of the evidence and set aside the judgment
only if the evidence supporting the challenged finding is so weak as to make
the judgment clearly wrong and manifestly unjust.  Figueroa
v. Davis, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.)
(citing Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986) (per curiam)).  In a
bench trial, the trial court acts as the fact-finder and is the sole judge of
the credibility of witnesses.  HTS Servs., Inc. v. Hallwood Realty
Partners, L.P., 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no
pet.); see also Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003) (“It is a familiar
principle that in conducting a factual sufficiency review, a court must not
merely substitute its judgment for that of the [fact-finder].”).  The fact-finder may choose to believe one
witness over another.  Figueroa, 318 S.W.3d at 60.

 

B.   Common-Law Marriage

A valid informal, or common-law,
marriage consists of three elements: 
(1) agreement of the parties to be married; (2) after the
agreement, their living together in Texas as husband and wife; and (3) their
representing to others in Texas that they are married.  Tex.
Fam. Code Ann. § 2.401(a)(2) (Vernon 2006); Eris v. Phares, 39 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.]
2001, pet. denied) (citing In re Estate
of Giessel, 734 S.W.2d 27, 30 (Tex. App.—Houston [1st Dist.] 1987, writ
ref’d n.r.e.)).  The existence of an
informal marriage is a fact question, and the party seeking to establish
existence of the marriage bears the burden of proving the three elements by a
preponderance of the evidence.  Weaver v. State, 855 S.W.2d 116, 120
(Tex. App.—Houston [14th Dist.] 1993, no pet.). 
An informal marriage does not exist “until the concurrence of all three
elements.”  Eris, 39 S.W.3d at 713 (citing Winfield
v. Renfro, 821 S.W.2d 640, 645 (Tex. App.—Houston [1st Dist.] 1991, writ
denied)).

          It is
uncontested that the parties cohabitated throughout their relationship, so we examine
whether Lopez met her burden to establish the other two elements of an informal
marriage—that Lopez and Martinez
agreed to be married and that they held themselves out as a married couple.

 

 

1.     Agreement to Marry

          To
establish an agreement to be married, “the evidence must show the parties
intended to have a present, immediate, and permanent marital relationship and
that they did in fact agree to be husband and wife.”  Eris,
39 S.W.3d at 714.  A proponent may prove an agreement to be
married by direct or circumstantial evidence. 
Russell v. Russell, 865 S.W.2d
929, 933 (Tex. 1993).  The testimony of
one of the parties to the marriage constitutes some direct evidence that the
parties agreed to be married.  Eris, 39 S.W.3d at 714.  Conduct of the parties, cohabitation, and
representations to others may constitute circumstantial evidence of an
agreement to be married.  Russell, 865 S.W.2d at 933.  However, “[a] finding that there is legally
and/or factually sufficient evidence of cohabitation and public representation
will not necessarily constitute legally and/or factually sufficient evidence of
an agreement to be married.”  Id. 
“[T]he circumstances of each case must be determined based upon its own
facts.”  Id.  

          Here,
Martinez argues that Lopez’s testimony “negated any possible inference of an
agreement to be married.”  Martinez himself
never testified regarding whether he and Lopez agreed to be married, but he
characterizes Lopez’s testimony as “direct evidence” that he never agreed to
marry her, and thus, “any possible circumstantial evidence . . . cannot
outweigh an outright repudiation of an agreement.”  For support, Martinez cites Lopez’s
testimony, given in response to his own counsel’s questions, that Martinez did
not include her name on his tax forms because he did not value her, that he
treated her only as the mother of his children, that he made her feel like she
did not have any value to him as a wife, that he was careful not to “pass as
[her] husband,” and that he “basically informed [her] that he was not [her]
husband” in the context of purchasing the property, trailer, and truck.

          This
testimony is insufficient support a conclusion as a matter of law that Lopez
made an “outright repudiation of an agreement” to be married or that Lopez’s
testimony was “direct evidence” that Martinez never agreed to marry her.  Furthermore, Lopez also testified that
Martinez had been her sole source of support from the birth of G.M. until the
end of their relationship in March 2008. 
She testified that she lived with Martinez as his wife during that time,
taking care of his home and children, and shopping for property and a trailer with
him.  Lopez also testified that she and
Martinez identified each other as husband and wife to friends and family, that
she believed she was his wife, and that they raised their children together as
the mother and father of the children.

Viewing this testimony in the light
most favorable to the finding under review and indulging every reasonable
presumption, Lopez’s testimony provides legally sufficient evidence that she
and Martinez “intended to have a present, immediate, and permanent marital
relationship and that they did in fact agree to be husband and wife.”  See Eris,
39 S.W.3d at 714; see also City of Keller,
168 S.W.3d at 822 (holding that we examine evidence in light most favorable to
trial court’s finding when reviewing legal sufficiency).

The only evidence that Martinez relies
on to support his assertion that he never intended to marry Lopez is Lopez’s
testimony as described above and the fact that he did not include her name on
various financial documents.  It was
within the trial court’s discretion, as the fact-finder and the sole judge of
the credibility of the witnesses, to credit Lopez’s testimony that she believed
she was Martinez’s wife.  See Figueroa, 318 S.W.3d at 60 (holding
that fact-finder may choose to believe one witness over another); HTS Servs., 190 S.W.3d at 111 (holding
that fact-finder is sole judge of credibility of witnesses).  It was also within the trial court’s
discretion to interpret Lopez’s testimony that Martinez did not value her, that
he treated her only as the mother of his children, that he made her feel like
she did not have any value to him as a wife, and that he was careful not to
“pass as [her] husband,” and that he “basically informed [Lopez] that he was
not her husband” in the context of purchasing the property, trailer, and truck as
evidence of the contentious nature of Lopez’s relationship with Martinez,
rather than as evidence that they never intended to be married.  See
Figueroa, 318 S.W.3d at 60; HTS
Servs., 190 S.W.3d at 111.

Martinez did not contest that he
provided the sole financial support for Lopez and their children, that Lopez
provided all of the domestic and child care for himself and their children,
that they shopped for the property and trailer together, or that he and Lopez
lived together exclusively and raised the children as their father and
mother.  Nor did Martinez contest Lopez’s
testimony that Martinez himself referred to them as being married to his
friends and family.  Thus, we also
conclude that, considering and weighing all the evidence, the evidence
supporting the finding that Martinez and Lopez agreed to be married was not so
weak as to make the judgment clearly wrong and manifestly unjust.  See Russell,
865 S.W.2d at 933 (holding that evidence of agreement to be married may be
inferred from conduct of parties, cohabitation, and representations); see also Figueroa, 318 S.W.3d at 59
(providing standard for factual sufficiency review of finding on which
appellant did not have burden of proof).

2.     Representations to Others of Marriage

Martinez also argues that Lopez did
not present any evidence other than her testimony that she and Martinez held
themselves out as a married couple in Texas. 
See Tex. Fam. Code Ann. § 2.401(a)(2) (requiring that parties
must have represented to others that they were married as element of
establishing informal or common-law marriage). 
“The statutory requirement of ‘represented to others’ is synonymous with
the judicial requirement of ‘holding out to the public.’”  Eris,
39 S.W.3d at 714–15 (citing Winfield,
821 S.W.2d at 648).  Spoken words are not
necessary to establish representation as husband and wife—it may be proven by the conduct and actions of
the parties.  Id. at 715.  Occasional
introductions as husband and wife are not sufficient to establish the element
of holding out.  Id.; see also Ex Parte Threet,
333 S.W.2d 361, 364 (Tex. 1960) (evidence that couple was introduced as husband
and wife to a few friends was no evidence that they held themselves out as
married); Winfield, 821 S.W.2d at 651
(two introductions as husband and wife insufficient to establish holding
out).  Thus, whether the evidence is
sufficient to establish that a couple held themselves out as husband and wife
turns on whether the couple had a reputation in the community for being
married.  Eris, 39 S.W.3d at 715; see
also In re Estate of Giessel, 734 S.W.2d at 31 (holding that couple held
themselves out as married when they had reputation in community for being
married even though they had kept marriage secret from a few family members).

          Martinez
argues that Lopez failed to present sufficient evidence of holding out because
she did not introduce any evidence of their reputation within the community for
being a married couple.  Martinez also
argues that Lopez “provided contrary evidence” as to whether they represented
themselves as husband and wife because she testified that Martinez purposefully
left her name out of his financial transactions and tax forms.  However, the fact that Lopez is not mentioned
in the financial documents is not direct proof that the couple did not
represent themselves as husband and wife. 
Furthermore, Lopez unequivocally testified that she introduced Martinez
as her husband and that he represented that she was his wife to all of their
friends and family.  Lopez also testified
that she lived with Martinez as his wife, beginning when G.M. was born, that
Martinez was her sole source of support during the time they lived together,
that she took care of the home they shopped for together, and that they raised
their children together.  Viewed in the
light most favorable to the trial court’s finding, Lopez’s testimony provides
legally sufficient evidence that she and Martinez represented to others that
they were married and supports an inference that they had a reputation in the
community for being married.  See Eris, 39 S.W.3d at 715 (providing
that holding out can be established by conduct and actions of parties); see also City of Keller, 168 S.W.3d at
822, 827 (providing standard for reviewing legal sufficiency).

Furthermore, Martinez did not offer
any testimony on this element himself or provide any evidence contradicting
Lopez’s testimony.  Thus, considering and
weighing all the evidence, the evidence supporting the finding that Martinez and
Lopez represented to others that they were married was not so weak as to make
the judgment clearly wrong and manifestly unjust.  See
Figueroa, 318 S.W.3d at 59 (providing standard for factual sufficiency
review of finding on which appellant did not have burden of proof). 

We overrule Martinez’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Sharp, concurring.  Opinion to follow.

 











[1]
          The trial court made the
following statements on the record after the trial:

 

The Court has heard the testimony and finds that a marriage did exist
between these parties because there was a holding out to family.  There were joint purchases, whether or not he
honored her by putting her name on those purchases they purchased the lot and
the trailer together.

                        They had two children
who bear his name and who have grown up with them as their mother and
father.  Although he denies an intent to
be married and she spoke with cultural tendencies by him of a disregard for
her, the Court can by inference find that there was intent to be married by his
holding out to family and the acquisition of property by joint purchases and
for the children.