In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00435-CV
_____

KATHLEEN EDNA FUSSELMAN, Appellant

V.

LELAND GEORGE FUSSELMAN, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 10-04-04180 CV

MEMORANDUM OPINION

In two issues, Kathleen Edna Fusselman appeals from a judgment denying her claim that she and Leland George Fusselman established an informal marriage. In issue one, Kathleen argues the great weight and preponderance of the evidence shows that she and Leland had an informal marriage. In issue two, Kathleen argues evidence obtained after the trial, a document that Leland filed with his employer, required the trial court to grant her motion for new trial.

1

## Background

Kathleen filed a petition to divorce Leland in April 2010. Her petition alleged that she and Leland were married in July 1996, and ceased living together as husband and wife in April 2010. Leland answered, denying that he and Kathleen had an existing marriage. Approximately four months later, Leland filed a motion to dismiss, alleging that he and Kathleen stopped living together in 1994; and, Leland claimed that he and Kathleen were divorced in July 1996, relying on a divorce decree from Harris County. Leland's motion also states that after he and Kathleen divorced, they never established a common law marriage.

Several months later, Kathleen filed an amended petition, acknowledging the 1996 divorce. Kathleen's amended petition alleges that she and Leland entered into an informal or common law marriage between 1998 and the date they separated in April 2010.

In April 2011, following a four-day bench trial, the trial court found Kathleen's material allegations of an informal marriage had not been proven by a preponderance of the evidence, and also found that no informal or common law marriage existed between Kathleen and Leland at any time after July 25, 1996. The trial court entered a judgment in Leland's favor, denying Kathleen's claim that the parties had an informal marriage.

Subsequently, Kathleen filed a motion for new trial, alleging that the trial court's finding of no informal or common law marriage was against the greater weight and preponderance of the evidence. Her motion for new trial also claims that newly discovered evidence, a change of benefits form that Leland filed with his employer, was evidence unavailable to her when the case was tried. According to Kathleen, Leland represented in the form that he and Kathleen were married on dates that support her claim that she and Leland established an informal marriage after they divorced. The form, which Leland signed approximately eight days after the bench trial began, reflects that Leland did request his employer to remove Kathleen from his medical, dental, and health care benefits coverage based on their "Divorce." In explanation of his request, in a box marked "Other Reason" for canceling coverage, Leland wrote "Ex Spouse No Longer Qualified as Dependent Under IRS Guidelines."

Standard of Review

An informal marriage may be proven by evidence that "the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." Tex. Fam. Code Ann. § 2.401(a)(2) (West 2006). The three elements of an informal

3

marriage must exist at the same time. *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

In this case, the factual disputes between the parties were resolved in a bench trial. "In a bench trial, the trial court acts as the fact-finder and is the sole judge of the credibility of witnesses." *Id.* "The existence of an informal marriage is a fact question, and the party seeking to establish existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence." *Id.*

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In conducting our review, we "must consider and weigh all of the evidence[.]" *Id.* An agreement to be informally married may be established by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993).

Arguments

In her first issue, Kathleen argues that the trial court's finding that no informal marriage existed between Leland and Kathleen is against the great weight and preponderance of the evidence. According to Kathleen, the facts in her case are substantially similar to the facts in *Lewis v. Anderson*. 173 S.W.3d 556, 563-64

4

(Tex. App.—Dallas 2005, pet. denied). In *Lewis*, the parties continued to live together as man and wife for twenty years after their divorce. *Id.* After the *Lewis* jury found that an informal marriage existed, the husband appealed, asserting that the evidence was legally and factually insufficient to support the verdict. *Id*. at 557. Over the husband's contention that the evidence supporting the verdict was so weak that the finding was clearly wrong and unjust, the Dallas Court of Appeals found the evidence legally and factually sufficient to support the jury's finding that the parties agreed to be married after their divorce. *Id.* at 563-64.

In Kathleen's case, unlike the jury that decided *Lewis*, the trial court failed to find in Kathleen's favor regarding her claim that she and Leland established an informal marriage. In contrast, in *Lewis*, the jury found the parties had an informal marriage. *Id*. Because Kathleen failed to prevail on a claim, she must demonstrate on appeal that the trial court's findings are so contrary to the overwhelming weight of all of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Due to the differences in the findings that result in different standards of review on appeal, we conclude that *Lewis* is distinguishable.

The record before us reflects that Kathleen and Leland were ceremonially married in 1976. In 1977, they had a child together. Kathleen and Leland divorced

in July 1996. Even though the record reflects the parties divorced in 1996, there was also evidence establishing that Leland and Kathleen held themselves out as married after their divorce, most notably when Leland insured Kathleen through his employer and when they filed joint tax returns for the years 2002 through 2009. Although Kathleen points to this evidence to support her claim of informal marriage, Kathleen was also required to prove that she and Leland lived together after their divorce and that she and Leland agreed to be married. *See* Tex. Fam. Code Ann. § 2.401(a)(2).

The record reflects that the evidence regarding the elements of cohabitation and agreement to be married were highly contested, as they depend largely on the weight and credibility the factfinder decided to assign the evidence the parties introduced during the trial. With respect to proving an agreement to be married, Kathleen relied primarily on a brief conversation that she testified she had with Leland outside a lawyer's office in 2000 after they executed separate wills. However, Leland testified the conversation at issue that Kathleen described having with him never occurred. Leland also testified that he never agreed to be married to Kathleen after they divorced. As the sole judge of the credibility of the witnesses, the trial court could reasonably disregard Kathleen's controverted testimony regarding her claim that the parties mutually agreed to be married. *See McGalliard*

*v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (noting that in a bench trial the trial court "may believe one witness and disbelieve others").

Kathleen relies on other circumstantial evidence in support of the claim that she and Leland established an informal marriage after their 1996 divorce. Leland's will, executed in 2000, contains a single reference to "my wife" in a survival clause, although it does not expressly refer to Kathleen. Kathleen suggests that this provision in Leland's will is circumstantial evidence that would have supported a finding that she and Leland agreed to marry. But, the will Kathleen executed the same day before the same witnesses as the one Leland executed refers to Leland as Kathleen's "former husband." Kathleen also identifies a will Leland signed in 2000 as circumstantial evidence that that trial court could have used to support a finding of an informal marriage. In his 2000 will, Leland left his estate to Kathleen. Kathleen also points to other documents Leland signed after their divorce, such as joint income tax returns, insurance applications, and retirement plan documents, which represent that Kathleen is Leland's spouse. Nevertheless, the testimony from the trial reflects that Leland denied that he ever agreed to marry Kathleen; he attributed the representations in the various documents to his confusion over his options in filling out forms or to miscommunications with his accountant.

7

After reviewing all of the evidence, Kathleen's claim that an agreement to marry existed is not the only inference available from the evidence before the trial court. While the various documents contain representations that are inconsistent with the trial court's determination regarding whether Leland agreed to marry after the parties' 1996 divorce, the trial court was free to accept Leland's explanations for the inconsistencies. Additionally, none of the documents on which Kathleen relies state that Leland agreed to marry, and Leland testified that he made no such agreement. When the evidence is conflicting, the factfinder is the sole judge of the credibility of the evidence and the weight to be given the testimony of the witnesses. *See Lewis*, 173 S.W.3d at 564. While another trial court might have resolved the issue differently, the evidence that Leland agreed to marry after his 1996 divorce is not overwhelming and it was the trial court's responsibility to weigh the evidence and to assess the credibility of the witnesses in resolving the dispute.

The trial court also rejected Kathleen's claim that the parties lived together after their 1996 divorce. Black's Law Dictionary defines "cohabitation" as "[t]he fact or state of living together, esp. as partners in life, usu. with the suggestion of sexual relations[]" and "matrimonial cohabitation" as "[t]he living together of husband and wife." Black's Law Dictionary 296 (9th ed. 2009). According to

8

Kathleen, Leland moved back into the marital residence in 2000; but other evidence introduced during the trial allowed the trial court to conclude that Kathleen lived in the main dwelling while Leland stored his possessions in a separate garage apartment while he was living in Trinidad. Also, the trial court was free to accept Leland's testimony that after 1994, he and Kathleen did not reside under the same roof and that after returning to the United States in 2007, he lived in a garage apartment next to Kathleen's house. And, Kathleen admitted during the trial that she and Leland did not live together in the house from 2000 through 2010. There was also evidence showing that from 1998 through 2010, another man lived in Kathleen's house; according to Kathleen, the man was her former lover with whom she did not currently have a sexual relationship. The trial court's conclusion that the parties did not live in the same household after their 1996 divorce is supported by testimony admitted during trial.

Kathleen also argues that evidence showing that Leland continued to support her after their 1996 divorce is circumstantial evidence of cohabitation. With respect to support, there was substantial evidence that Leland continued to provide financial support to Kathleen after they were divorced. However, the trial court could have reasonably rejected Kathleen's claim that providing support implied cohabitation; instead, the trial court could have reasonably believed that Leland

paid Kathleen's bills because she was the mother of his daughter and because she was responsible for maintaining the household where their daughter and grandchildren lived. We also note that under the terms of their 1996 divorce decree, Leland was required to pay the mortgage on Kathleen's house and to pay alimony.

Substantial evidence also supports the trial court's inference that the parties did not engage in sexual relations after their divorce. According to Kathleen, she and Leland did not engage in sexual relations at any time after their divorce. However, Kathleen argues this evidence should be disregarded because their sexual relationship ceased several years before they were divorced. Kathleen expressed the opinion that "nothing changed" after the divorce, but there was evidence that circumstances had changed. Before they divorced, Leland slept in a chair inside the main house; after the divorce, and after returning to Texas, Leland slept in the garage apartment. The evidence is consistent with Leland's claim that the parties did not engage in sexual relations after their 1996 divorce.

Considering all of the evidence in the record, the trial court's conclusion that Kathleen and Leland were not living together as husband and wife after they divorced is not against the great weight and preponderance of the evidence. After reviewing all the evidence, we cannot say the evidence contrary to the trial court's

judgment is so overwhelming that its finding that no informal marriage existed is clearly wrong and unjust. We overrule issue one.

In issue two, Kathleen contends the trial court erred in denying her motion for new trial. Eight days after the trial began, Leland submitted an "Action Plan Request For Change Form" to his employer. On the form, Leland identified a "Divorce" as a qualifying event that occurred on April 11, 2011, explaining "Ex Spouse No Longer Qualified as Dependent Under IRS Guidelines." Kathleen argues that Leland's representation is a post-trial admission that an informal marriage existed after their 1996 divorce.

Kathleen's motion for new trial asserts that the form was newly discovered evidence. The standard regarding newly discovered evidence requires:

> A party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. Denial of a motion for new trial is reviewed for abuse of discretion.

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010) (footnotes omitted). The record from the trial reflects that Kathleen introduced several documents dated after the 1996 divorce containing Leland's representation to his employer that he and Kathleen were married. Because the newly discovered

11

evidence was cumulative of other evidence admitted during trial, we hold the trial court's denial of Kathleen's motion for new trial was not an abuse of discretion. *See id.* We overrule issue two, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 16, 2013
Opinion Delivered September 26, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.